CANTON, ABERDEEN & NASHVILLE RAILROAD CO. *v.* MARTHA FRENCH.

RAILROADS.    *Stock gaps and cattle guards.*    Code 1892, § 3561.

The owner of land located in a stock law district, where the common law rule as to live stock running at large prevails, cannot maintain an action against a railroad company for the statutory penalty prescribed by code 1892, § 3561, for failure to maintain stock gaps and cattle guards.

FROM the circuit court of Monroe county.

HON. NEWNAN CAYCE, Special J.

The facts are stated in the opinion.    For a previous report of the case see *French* v. *Canton, Aberdeen & Nashville Railroad Co.*, 74 Miss., 542.

*Bristow & Sykes* and *Mayes & Harris*, for appellant.

It was proved that the land in controversy was in the stock law district of Monroe county, and that the railroad company owned the fee to its one hundred foot strip thereof, improperly called its right of way.    Laws 1882, p. 237.

The action is a technical one for a penalty on a highly penal statute, and the appellant has the right to insist upon technical defenses; but we prefer to present the case on higher grounds. If we show, as we can, that the reason of the law does not exist, or that the object of its enactment would be defeated, rather than effectuated, by the application of the statute, code 1892, § 3561, to this case, we assume that the judgment appealed from will be reversed.

The requirements of the section were made wisely to stop short of requiring cattle guards in every instance where a railroad track passes through inclosed land.    The gaps and guards are required only where they are "necessary or proper."    If

the present is not a case where they are not "necessary or proper," and the statute itself contemplates that there are such cases, the mind cannot conceive of one.

The object of the section, as announced by this court in *Kansas City, etc., R. R. Co.* v. *Spencer*, 72 Miss., 491, is twofold: To insure safety of the traveling public, and to protect the interest of cattle owners. Of necessity, the stock gaps and cattle guards must be for one of two purposes—either to keep other people's cattle from breaking in, or to keep the landowner's cattle from breaking out. Neither of these purposes can be effected in the present case, except by reason of a direct and wanton violation of law. As long as live stock is permitted to run at large, the danger of injury to them from railroad trains, or of damage and loss to the trains and traveling public, is at a minimum. But establish a stock law, and allow the landowner to build an inclosure around and over not only his own land, but to include therein the railroad's land and track, and in that inclosure confine large herds of cattle, where numerous trains are daily passing, and consider the inevitable results. How can either object of the statute be thereby effected? Railroad companies are entitled to presume that every person will comply with the law forbidding owners to allow animals to run at large. *Daniels* v. *Grande, etc., R. R. Co.*, 22 Am. & Eng. R. R. Cases, 609, *VanHorn* v. *Burlington*, 7 *Ib.*, 591.

*Gilleylen & Leftwich* and *George C. Paine*, for appellee.

It is claimed that under the local act of 1892, laws 1892, p. 237, appellee had no right to permit her live stock to run at large, and on the roadbed of appellant, and that she had no right to require appellant to maintain stock gaps or cattle guards, and the same were not necessary and not required under § 3561, code. Section 1 of the local act provides " that to save expense, and in order that farmers may cultivate and gather their crops without fences, it shall be unlawful for any stock to run at large in that portion of Monroe county south of the

northern boundary line of said county, and west of Town creek and of the Tombigbee river, upon the lands of any person except the owner or lessee thereof.'' Section 2 provides '' that any live stock found running at large or trespassing upon the fields, pastures or lands of any other person than the owner or lessee thereof, in that portion of Monroe county before designated, it shall be lawful for any person resident in said portion of said county to take up, keep, and confine such live stock,'' etc. There is no conflict between this local law and § 3561, code 1892, requiring railroads to construct and maintain necessary stock gaps and cattle guards, where the track passes through the inclosed land of another. The object of the local act is to save expense to farmers residing in the territory to which the act applies, and in case of its violation, the power is conferred alone on residents to take up and confine the live stock running at large. Evidently, in the passage of the local act, railroads were not in the mind of the legislature; the same was not passed for the benefit of the roads, but for the advantage of farmers only residing in the district. It cannot reasonably be said that appellee's stock were running at large when within her inclosure, though the inclosure embraced a part of the railroad's right of way, or that appellee in any way violated the local act. We cite the court to the following cases, in further response to appellant's argument: *Adams* v. *Kansas City, etc., R. R. Co.,* 74 Miss., 331; *Roberds* v. *Mobile, etc., R. R. Co.,* 74 Miss., 334; *Alabama, etc., R. R. Co.* v. *McAlpine,* 71 Ala., 545. The language of the code section is: '' It is the duty of every railroad company,'' etc.; and this statute was enacted in the face of local laws, and of appellant's charter and those of other railroad companies.

WOODS, C. J., delivered the opinion of the court.

This is an action brought by appellee as owner of the S. ½ of the S. ½ of section 20, township 15, range 15, in Monroe county, for the recovery of the statutory penalty of $250, under § 3561, code of 1892, on account of the railroad's failure

to erect and maintain necessary or proper stock gaps and cattle guards where the railroad's tracks passes through said lands, which are alleged to be inclosed.    Briefly stated, the facts disclosed by the transcript are these: The lands inclosed are, in fact, about twenty-five acres in the subdivision of section 20, named in the declaration, including, as we understand the diagram and evidence, the one hundred foot strip of the right of way of the railroad.    This inclosed land is used for purposes of pasturage by appellee and the tenants on her plantation. The eastern line of fence inclosing this pasture is for about half of its length on the railroad's one hundred foot strip of land used as its right of way, and near said strip where not actually on it, the one hundred foot strip lying on the eastern border of the pasture, and constituting part of the pasture, as claimed by the appellee.    Except two insignificant fragments of land east of the railroad's one hundred foot strip, the whole twenty-five acres, less the right of way and the two very small pieces just referred to, lies west of and adjoining the railroad's right of way.    This one hundred foot strip of the railroad's land is owned by it in fee, and has been since the railroad was constructed.    In that part of Monroe county in which this land lies a stock law is in force, and has been since September 1, 1882.    By the provisions of this law (acts of 1882, p. 237), amongst many others, it is made unlawful for any live stock to run at large upon the lands of any person except the owner or lessee thereof.    In effect, the rules of the common law touching the running at large of live stock are made operative.

The position of counsel for the railroad is that in a stock law district where every landowner is forbidden to suffer his stock to run at large, except upon lands of which he is owner or lessee, there exists such conditions as to render stock gaps and cattle guards neither necessary or proper.    In other words, inasmuch as every landowner is, in effect, required to keep under fence his own live stock, on his own land, and inasmuch as he and all other landowners are directly authorized to make

and gather their crops without fences, stock gaps and cattle guards are neither necessary or proper, the presumption being that everyone will obey the law, and, by fencing or otherwise, keep his stock on his own lands, and prevent their trespassing upon the lands of others.

It is further contended by counsel for the railroad that appellee is a violator of the law, in that she does not keep her stock upon her own lands, but is permitting them to run at large upon the railroad's land, and, moreover, that this violator of law is seeking, by this action, on a highly penal statute, to recover $250 for the failure of the railroad company to inclose its lands with appellees, so as to prevent appellees' stock from passing through its uninclosed land and out of them on and to the uninclosed lands of others.

All these contentions are sound, unless, indeed, in a stock law district where the common law touching the running at large of live stock is in force, the rights of property of a railroad company are other than, and different from, those of all other landowners. We know of no rule of law or reason which will require a railroad to leave its lands uninclosed (there being no law requiring it to fence), and deny the use of them, as natural persons may, for any lawful purposes, according to its pleasure. To illustrate: If the appellant should desire to erect section houses on its right of way at the point in question, and permit its servants there to make and cultivate gardens and truck patches on its uninclosed land, can anyone assign any sound or plausible reason for the assertion of a right in appellee to permit her live stock to run at large upon such uninclosed gardens and truck patches, and destroy the crops of the railroad's servants?

But we have held that the statute requiring stock gaps and cattle guards to be erected and maintained when necessary and proper, was designed, not alone for the benefit of the landowner, but for the increased safety of the traveling public. How would the interests of the traveling public be subserved

by permitting a landowner adjacent to the railroad to inclose a small pasture, including the track and right of way of the railroad, and compelling the railroad to inclose its land, whereby an unlimited number of every variety of live stock might be penned near and upon the track and right of way? It is plain that the safety of the traveling public would be greatly endangered thereby. It would be infinitely safer for the railroad and the traveling public transported by it, to fence all growing crops, and give live stock free range everywhere, as is the case in other sections of the state where the common law on this subject does not prevail. If we examine our own decisions, beginning with *Vicksburg & Jackson Railroad* v. *Patton*, 31 Miss., and the others following it, we shall be driven irresistibly to the conclusion, that, where the common law rule as to stock running at large prevails, everyone must keep his stock on his own land, and that the railroad is entitled to protection from trespassing stock unlawfully permitted to run at large. Its rights and its duties are simply those of other landowners in cases such as the present.

A peremptory instruction for the railroad company might properly have been given.                    *Reversed.*